IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COSTAR GROUP, INC.<br>1331 L Street NW<br>Washington, D.C. 20005<br><br>and<br><br>COSTAR REALTY INFORMATION, INC.<br>1331 L Street NW<br>Washington, D.C. 20005<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>COLTON G. CHASTINE<br>2470 Cheshire Bridge Road NE #1402<br>Atlanta, GA 30324<br><br>　　　　　Defendant. | Case No. 22-501 |

## COMPLAINT

Plaintiffs CoStar Group, Inc. ("CGI") and CoStar Realty Information, Inc. ("CRI") (collectively, "CoStar," the "Company," or "Plaintiffs"), by and through their undersigned counsel, for their complaint against Defendant Colton G. Chastine ("Chastine"), hereby allege with knowledge as to themselves and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action for injunctive and monetary relief arising from Chastine's breach of a Terms and Conditions of Employment Agreement that he entered into with CRI on June 17, 2021 (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit A.

2. Until recently, Chastine worked for CRI as a Product Manager responsible for contributing to the strategy and future direction of Homes.com. Homes.com is an online listing

service for homebuyers to search available properties and brokers and agents to market residential properties of all types nationwide. Homes.com is a centerpiece of CoStar's key strategic effort to substantially expand its offerings in residential real estate platforms and to gain market share in that area.

3. As a Product Manager, Chastine also had access to confidential information regarding Citysnap, a consumer-facing search portal to locate residential property listings in the New York City market launching in summer 2022.

4. On February 17, 2022, CoStar learned that Chastine was leaving CRI to work for StreetEasy, Inc. ("StreetEasy"). Chastine's last day with CRI was February 17, 2022 and he is scheduled to begin working at StreetEasy on February 28, 2022. StreetEasy is a subsidiary of the Zillow Group, Inc. ("Zillow") and provides an online platform for searching for residential properties to buy, sell, or rent in the New York City area. CoStar's new Citysnap product is designed to directly compete with StreetEasy for the same services in the same geographic market. StreetEasy and Zillow both also compete with CoStar's Homes.com online platform.

5. In the Agreement, Chastine committed not to work in a similar capacity or provide similar services to any company that competes with CoStar and its businesses for a period of one year after Chastine's date of termination of his employment from CRI. He also committed to protect and not disclose CoStar's confidential information.

6. Notwithstanding his contractual commitments to CoStar in the Agreement, Chastine breached that contract by accepting an offer of employment with StreetEasy, a direct competitor that offers similar online resources to list and find residential properties to rent, sell and/or buy.

7. CoStar will be severely and irreparably harmed if Chastine is able to take the skills and proprietary information CoStar has spent months developing, and bring them to a direct competitor. Putting aside the large investment that CoStar is dedicating to implementing the design and research efforts that Chastine has been working on, CoStar's competitive advantage through its planned relaunch will be lost if its confidential information is transferred to a direct competitor through Chastine.

8. In the Agreement, Chastine stipulated that if he were to breach any of the restrictive covenants, the damage to CoStar would be irreparable and that the Company would be entitled to preliminary and permanent injunctive relief enjoining such breach without having to post bond or other security.

9. Through this Complaint, CoStar seeks an order enjoining Chastine from further breaches of the Agreement. CoStar additionally seeks any and all monetary damages that they have suffered as a result of Chastine's wrongful conduct.

## PARTIES

10. Plaintiff CGI is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Washington, D.C.

11. Plaintiff CRI is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Washington, D.C. CRI is a wholly-owned subsidiary of CGI.

12. Defendant Colton G. Chastine is an individual who, upon information and belief, lives in Atlanta, Georgia. Chastine previously worked at CRI as a Product Manager and is scheduled to begin employment with StreetEasy on February 28, 2022.

**JURISDICTION AND GOVERNING LAW**

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are entirely diverse of citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.

14. This Court has personal jurisdiction over Chastine pursuant to the Section 5.10(a) of the Agreement, which provides in relevant part: "the parties agree that any proceeding for injunctive relief shall be brought exclusively in the Superior Court of the District of Columbia or in the United States District Court for the District of Columbia and the parties agree to the jurisdiction thereof."

15. Pursuant to Section 5.4 of the Agreement, Georgia law governs the contract at issue. The Agreement provides in relevant part: "This Agreement shall be governed by the laws of Georgia, without reference to its conflicts of law provisions."

**FACTUAL BACKGROUND**

16. CoStar is a provider of online real estate information, analytics, and marketplace services for the residential and commercial real estate property markets. CoStar has the most comprehensive database of real estate data throughout the United States and owns and operates a number of online products for use in the real estate industry, including:

(i) Apartments.com, an online listing service for renters to locate apartment rentals nationwide and property managers and owners to market their properties;

(ii) Homes.com, an online listing service for homebuyers to search available properties and brokers and agents to market residential properties of all types nationwide;

(iii) Homesnap, an online platform that provides agent-client collaboration tools and applications that make the residential real estate agent workflow more efficient, including facilitating realtors' marketing on other sites, like Homes.com; and

(iv) Citysnap, an online consumer-facing search portal to locate residential property listings in the New York City market launching in summer 2022.

17. A key strategic goal of CoStar is to dramatically expand its product and service offerings in the residential real estate market. It has made a substantial investment in this area over the past few years. Indeed, in December 2020, CRI acquired Homesnap in a $250 million merger. Just months later in May 2021, CRI spent $152 million to acquire the Homes.com website and brand and has been preparing a major overhaul and relaunch of the website. It anticipates spending between $300 million to $320 million on these initiatives and continuing to make substantial investments in subsequent years.

A. **Chastine's Employment with CoStar as a Product Manager**

18. In June 2021, Chastine began working as a Product Manager for Apartments.com, in which he was responsible for designing aspects of the Apartments.com platform. About two months later, he transitioned to the Homes.com team. With the Homes.com team, Chastine was responsible for implementing the strategy of the listing detail page—the page for each real estate listing containing the details of the property. The listing details page is a critical part to the platform and is the page where Homes.com users spend most of their time.

19. To determine what features Homes.com should offer, the Company has spent almost a million dollars on research and analysis into customer preferences, competitor product offerings, real estate broker input, and other market analysis. Chastine was responsible for the research and analysis efforts with respect to the design of the listing details page for the relaunch of Homes.com. He would obtain and analyze this information, and then incorporate it into designs of the page.

20. Chastine then worked directly with the Company's developers to implement his vision for the product. Chastine would review the developers' work and provide feedback. He also provided input on the developers' performance reviews.

21. The redesign of Homes.com is a centerpiece of CoStar's effort to grow its footprint in the residential real estate area, and Chastine's role in designing the central component of the Homes.com platform placed him in a unique position to gain highly sensitive CoStar confidential information. In particular, he had access to information regarding all of the details surrounding what features and content Homes.com will offer after it is relaunched, the timing of the relaunch, and how Homes.com will be designed to compete against every competitor in that market, including against StreetEasy, Mr. Chastine's new employer, and Zillow, the parent company of StreetEasy. He also had access to and extensive knowledge about the proprietary methods by which residential real estate MLS listings are fed into and displayed in CoStar's products.

22. Through his work for CoStar, Chastine also learned other confidential and proprietary CoStar information. As part of his role as a Homes.com Product Manager, Chastine remotely supported two high-level offsite strategy planning meetings in early 2022 involving a small group of the Company's top product managers and designers. These meetings focused on identifying important new strategic initiatives for the Company, and specifically the relaunch of Homes.com. Chastine had access to all work prepared during those meetings and was thus intimately involved in the planning for and direction of CoStar's business.

23. Further, by reason of his employment and training with CoStar, Chastine now possesses specialized abilities regarding Figma, a software program used to design front-end website and mobile pages and features. Only a small number of CoStar employees have access to Figma, and an even smaller number—including Chastine—have full editing rights. CoStar

purposefully restricts access to Figma and only grants permission to certain employees by assigning a username and password and specific levels of access rights.  Chastine became an expert in using Figma and eventually trained other product managers on how to use the design program.

### B.    Chastine's Terms of Employment

24.    When Chastine was hired by CRI, he executed a Terms and Conditions of Employment Agreement on June 17, 2021.  In Section 2.5(c) of the Agreement, Chastine agreed that for one (1) year from the date of his termination of employment for any reason, he would not "directly or indirectly, on behalf of a Competitor[,] perform the same or similar duties or duties to those that [he] performed for CRI."  Ex. A at 5.

25.    The Agreement defines "Competitor" in relevant part to include "any company or business that competes with the business unit(s) of the Company where [Chastine] worked and that (i) provides an online resource to individuals seeking a rental apartment or home through the internet, or sells or provides advertising products and services in connection with such online resource to third parties, [or] (ii) provides an online rental housing leasing platform used by property managers and renters…."  Ex. A at 5.

26.    The Agreement defines "the Company" as "CGI, CRI, and the rest of CGI's wholly owned subsidiaries (either directly or indirectly) incorporated in the United States."  Ex. A at 1. In Section 5.6, Chastine agreed that "the terms of [the] Agreement shall inure to the benefit of and may be enforced by the Company and the Company's successors or assigns."  *Id.* at 7.

27.    Chastine acknowledged in Section 2.1(a) that he "has and will have access to and will come into contact and learn various technical and non-technical trade secrets and other confidential information, which are the property of the Company (collectively, the "Confidential Information")."  Ex. A at 2.  In Section 2.1(b), Chastine agreed that he would not "directly or indirectly: (i) disclose or divulge any Confidential Information to any person, entity, firm, or

company, unless compelled by a validly issued subpoena or court order; or (ii) use any Confidential Information in any manner other than to perform his or her employment for CRI." *Id.* at 3.

28. In Section 4, Chastine acknowledged that "any breach of [the] Agreement will result in irreparable and continuing harm to the Company, for which money damages may not provide adequate relief." Ex. A at 6. Furthermore, Chastine stipulated that "in the event of any breach or anticipatory breach of [the] Agreement by [Chastine] . . . the parties agree that the Company shall be entitled to the following particular forms of relief as a result of such breach, in addition to any remedies otherwise available to it at law or in equity: (a) injunctions, both preliminary and permanent, enjoining or restraining such breach or anticipatory breach, and [Chastine] hereby consents to the issuance thereof forthwith and without bond by any court of competent jurisdiction; and (b) recovery of all reasonable sums and costs, including attorneys' fees, incurred by the Company to defend or enforce the provisions of [the] Agreement." *Id.*

29. To further protect CoStar's interests, the Agreement provides in Section 4 that "the restrictive periods set forth in [the] Agreement (including those set forth in Sections 2 and 3 hereof) shall not expire and shall be tolled during any period in which [Chastine] is in violation of such restrictive periods, and therefore such restrictive periods shall be extended for periods equal to the durations of [Chastine's] violations thereof." Ex. A at 6.

C. **Chastine Resigns from CoStar to Join StreetEasy**

30. On or about January 24, 2022, Chastine informed his indirect supervisor, Dan Russotto that he received an offer from a different company and would be leaving CRI. When asked, Chastine refused to divulge his new employer. He also added that there were no conflicts with the new employer. At that same time, Chastine did divulge the compensation that the new employer offered him: a base salary of $130,000, a $20,000 annual bonus, plus $27,000 in stock, and a one-time signing bonus of $25,000 for a total package of $202,000 in compensation. There

were an additional grants scheduled for future years. This was substantially more than he was receiving at CoStar, where he made approximately $115,000 per year, without stock options, and a smaller annual bonus of $11,500. Russotto tried to convince Chastine to stay with CRI by potentially providing a counter-offer of a promotion and revised package to compete with the new employer's compensation package but Chastine refused to consider any offer from CoStar. Chastine's last day of employment with CRI was scheduled to be February 25, 2022.

31. On February 17, 2022, Chastine finally disclosed that he would be joining StreetEasy, a subsidiary of one of CoStar's most significant competitors, Zillow. CoStar terminated Chastine's employment that afternoon and requisitioned Chastine's work computer to prevent Chastine from accessing any more of CoStar's confidential information.

32. On information and belief, StreetEasy's offer was substantially more than the market rate for Chastine's position and experience, which is roughly the amount he was receiving at CoStar. The offer was so far above the approximate market average as to raise even more significant red flags amongst the CoStar team regarding the intent of StreetEasy in hiring him (beyond those already raised given his access to CoStar's most significant and strategic trade secrets and his decision to go there notwithstanding his non-compete agreement).

        **D.**      **Chastine Collected Confidential Information Prior to Resigning**

33. On information and belief, it appears that Chastine collected and solicited even more CoStar confidential information shortly before his anticipated transition to StreetEasy in an effort to help StreetEasy compete more effectively with CoStar. In or around December 2021, he began to inquire about key features of Citysnap, a product that he did not support but which would compete directly with his new employer, StreetEasy. Chastine claimed that he needed the information to assist in his Homes.com product design work. Through his inquiries, Chastine obtained critical and strategic confidential Citysnap documents.

34. Prior to his departure, Chastine also created a personal portfolio in Figma, CoStar's design software, of confidential design images of highly confidential design images from across CoStar's system of key features and improvements that do not appear to be related to his work. Such actions combined with his decision to work for StreetEasy evidences an intention to use such images to assist StreetEasy in its effort to compete more effectively against CoStar.

35. Chastine was also active in the Figma system until the last minute. He accessed nearly 100 documents in Figma on the day he was terminated, up until nearly 6 pm that day. This included accessing over 30 files after he had disclosed to his superiors that he was leaving for competitor StreetEasy.

36. Thus, Chastine obtained extensive knowledge of highly proprietary, confidential, and competitive information regarding CoStar's key strategic initiatives with respect to new products, improved features, and future business models, all of which he can use quickly to arm his new employer to compete more effectively against CoStar and its newest product, Citysnap.

    **E.    Chastine Will Use and Disclose CoStar's Confidential Information at StreetEasy**

37. Notwithstanding his acknowledgement of his non-compete obligations, Chastine accepted employment with StreetEasy, a company that directly competes in the same industry as multiple CoStar products that Chastine was involved with at CoStar, including Homes.com and Citysnap. StreetEasy operates a website in the New York City metropolitan area to assist users in renting, buying, and selling real estate. StreetEasy is also a subsidiary of Zillow, which directly competes with CoStar products, and in particular Homes.com.

38. Upon information and belief, Chastine will be working in a similar role and performing the same or similar duties at StreetEasy to those he performed for CRI. Given Chastine's training, prior job experience, and work at CoStar, he is likely to be assuming a position

in product design and marketing, similar to that performed at CoStar. And given the close similarity in services offered by StreetEasy to those at CoStar, his work will almost certainly involve similar duties to those provided to CoStar. According to Chastine, his first day at StreetEasy will be February 28, 2022.

39. Chastine cannot unlearn the valuable information he gained at CRI. He is now aware of the key strategic business goals of CoStar, including, specifically, initiatives CoStar is undertaking to compete against companies like StreetEasy and Zillow like the inner workings of CoStar's soon-to-be launched product, Citysnap and the pending launch of the redesigned Homes.com. Given Chastine's intimate knowledge of CoStar's future strategies and products, how CoStar plans to improve its services to compete with his new employer, among others, and CoStar's data and market analysis, he will inevitably use and/or disclose CoStar's confidential information and trade secrets at StreetEasy.

40. The confidentiality of CoStar's data and strategies is critical to its business and its ability to compete with other rental and sale platform businesses like Zillow and StreetEasy. Chastine's extensive knowledge of CoStar's proprietary and confidential information is particularly sensitive in light of CoStar's upcoming release of Citysnap, which is specifically designed to compete with StreetEasy, and the launch of the redesigned Homes.com website.

41. On February 22, 2022, the Company, through its counsel, informed both Chastine and Zillow that Chastine would violate the Agreement's non-compete covenants if Chastine began working at StreetEasy and demanded that Chastine cease and desist from any potential violation by not working for Zillow or StreetEasy until February 19, 2023 at the earliest.

42. To date, neither Chastine nor his new employer has provided any substantive response to such inquiries.

## COUNT I
### (Breach of Contract)

43. Plaintiffs repeat and re-allege Paragraphs 1 through 42 as if fully set forth herein.

44. The Agreement constitutes a valid and binding legal contract between Chastine and CoStar.

45. Chastine materially breached the Agreement in two separate and independent ways. First, he breached the Agreement by accepting employment with StreetEasy within one (1) year of his date of termination from CRI and will further breach that agreement by commencing work for StreetEasy starting next week. StreetEasy is a Competitor, as defined by the Agreement, that cannot employ Chastine without resulting in him violating the Agreement.

46. Second, he likely has and will continue to breach the confidentiality provisions of the Agreement. As evidenced by his actions prior to his departure from CRI, Chastine has likely retained confidential information regarding CoStar's business. Moreover, immediately upon joining StreetEasy, Chastine will necessarily use and disclose CoStar's confidential information to others at StreetEasy and its affiliates in further breach of the Agreement.

47. Chastine's breaches will cause CoStar irreparable harm to its critical business initiative to develop products to successfully compete in the residential online platform space, unless and until Chastine's conduct is enjoined by the Court.

48. Moreover, as a result of Chastine's breach, CoStar will suffer substantial monetary damages and will continue to be damaged if Chastine is permitted to begin working for StreetEasy. CoStar is entitled to recover such damages in an amount to be proven at trial.

## PRAYER

WHEREFORE, CoStar prays for an order of this Court:

A. Preliminarily and permanently enjoining Chastine from violating the non-compete provisions in the Agreement as set forth in this Complaint, including but not limited

    to enjoining him from working for Zillow and/or StreetEasy until one year after his breach ceases or an injunction is entered;

B. Preliminarily and permanently enjoining Chastine from any misappropriation or misuse of CoStar's confidential information;

C. Finding Chastine liable and awarding CoStar damages, in an amount to be proven at trial, sufficient to compensate it for all forms of loss, including, without limitation, actual damages, lost goodwill, and other costs incurred by reason of Chastine's breaches of the Agreement;

D. Awarding CoStar pre- and post-judgment interest as allowed by law;

E. Awarding CoStar such other and further relief as this Court may deem proper, just, and equitable.

Dated: February 25, 2022

*/s/ Sarah M. Gragert*
Sarah M. Gragert (DC Bar No. 977907)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200
sarah.gragert@lw.com

Matthew W. Walch (*PHV petition forthcoming*)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
(312) 876-7700
matthew.walch@lw.com

*Attorneys for Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc.*