# EXHIBIT A



# TERMS AND CONDITIONS OF EMPLOYMENT

(Georgia)

This Agreement (the "Agreement") is entered into between  Colton G Chastine    (hereinafter "Employee") and CoStar Realty Information, Inc. ("CRI"), 1331 L Street, NW, Washington, DC  20005. CRI is a wholly owned subsidiary of CoStar Group, Inc. ("CGI" and collectively, CGI, CRI and the rest of CGI's wholly owned subsidiaries (either directly or indirectly) incorporated in the United States are hereinafter referred to collectively as the "Company").

WHEREAS, the Employee is being employed by CRI, but acknowledges and understands that the Company is centrally managed and therefore, he/she is likely to perform services on behalf of other subsidiaries of the Company and to access information owned by the Company; and

WHEREAS, in consideration of Employee's initial employment with CRI, which shall begin on the first day that Employee reports to work for CRI and on the terms as agreed between Employee and CRI, and Employee's access to and provision of the Confidential Information (defined below), and for good and sufficient mutual consideration.

NOW, THEREFORE, CRI and the Employee hereby agree to be bound by this Agreement, as follows:

### Section 1.  Employee's Employment

1.1     Employment At Will.  CRI is an "at-will" employer, meaning that the Employee's employment with CRI can be terminated by either CRI or the Employee at any time with or without cause and with or without notice.  This Agreement is not a contract, express or implied, relating to the Employee's employment with CRI for any specific duration.

1.2     Prior Employment Contract.  Employee hereby acknowledges that he/she has given CRI a copy of any other employment agreement to which he/she is currently a party, including any agreement that contains any confidentiality, non-competition or non-solicitation provision binding on the Employee.  The Employee represents that he or she is not subject to a restrictive covenant or other contract or agreement of any kind which would prohibit, restrict or limit employment with CRI.  If Employee learns or becomes aware or is advised that he or she is subject to an actual or alleged restrictive covenant or other prior agreement which may prohibit or restrict employment by CRI, Employee shall immediately notify CRI of the same.  Employee agrees that he or she shall not disclose to the Company, use for the Company's benefit, or induce the Company to use any trade secret or confidential information he or she may possess or any intellectual property belonging to any former employer or other third party.

### Section 2.  Duties of Employee

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



2.1     <u>Duty of Confidentiality</u>.

(a)     Employee acknowledges and agrees that Employee has and will have access to and will come into contact and learn various technical and non-technical trade secrets and other confidential information, which are the property of the Company (collectively, the "Confidential Information"). Confidential Information means data and information relating to the business of Company; disclosed to Employee or of which Employee became aware as a consequence of Employee's relationship with Company; having value to Company; and not generally known to competitors of Company.  Employee acknowledges and agrees that Employee is being provided access to such trade secrets and Confidential Information, subject to and solely based upon Employee's agreement to the covenants set forth in this Agreement and Employee would not otherwise be afforded access to such information.  Such Confidential Information includes, but is not limited to: (i) methods for developing and commercializing online rental housing leasing platforms and related software used by property managers and renters (e.g., techniques or processes used for tenant screening, rental applications, automated leasing documentation, rental payments, lease renewals and customized rental recommendations ), research methods, methods of compiling real estate information, proprietary models, methods of creating the Company's database, methods for conducting commercial real estate market and portfolio forecasting and analysis, procedures, techniques, devices, machines, equipment, data processing programs, software, computer models, research projects, trade secrets, statistical data compilations, and other means used by the Company in the conduct of its business; (ii) processes, methods, techniques, applications and procedures, including without limitation all formulae, algorithms and models, used by the Company (A) in calculating, creating or deriving products and services and (B) for search engine optimization or management; (iii) product formulations, strategies and plans for future business, new business, product or other development, new and innovative product ideas, potential acquisitions or divestitures, and marketing plans and strategies; (iv) information with respect to costs, commissions, fees, profits, sales, markets, sales methods and financial information; (v) mailing lists, the identity of  the Company's customers, distributors and suppliers and their names and addresses, the names of customer representatives responsible for entering into contracts for the Company's products or services, the amounts paid by such customers to the Company, specific customer needs and requirements, and leads and referrals to prospective customers; and (vi) the identity of the Company's other employees and independent contractors, their respective salaries or fees, bonuses, benefits, relative qualifications and abilities, and manuals or any other documents embodying Company practices and policies (the "Personnel Information"); all of which information Employee acknowledges and agrees is not generally known or available to the general public, but has been developed, compiled or acquired by the Company at its great effort and expense.  Confidential Information can be in any form: oral, written or machine readable, including electronic files.

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



(b)     Employee agrees to treat all Confidential Information in a secret and confidential manner and agrees not to reproduce or copy any of such Confidential Information without the Company's written consent. Employee agrees that he or she will not, without the prior written consent of the Company, directly or indirectly: (i) disclose or divulge any Confidential Information to any person, entity, firm, or company, unless compelled by a validly issued subpoena or court order; or (ii) use any Confidential Information in any manner other than to perform his or her employment for CRI. Employee agrees that, given the nature of the Company's business and business plans there will never come a time when disclosure of Confidential Information would not seriously injure the Company.  Nothing in this Agreement prohibits Employee from discussing Personnel Information with other employees, or with third parties who are not future employers or competitors of the Company. Additionally, nothing contained in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblowing proceeding or other proceeding before any federal, state, or local government agency (e.g., EEOC, NLRB, SEC, etc.). Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that:  (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(c)     Employee agrees to provide such reasonable assistance as may be required by the Company to maintain the secrecy and confidentiality of the Confidential Information.

(d)     Employee agrees that, immediately upon termination of Employee's employment for any reason, or at any time the Company so requests, he or she will promptly deliver to the Company all Confidential Information and all copies thereof, and all other property of the Company that are in his or her possession or control.

2.2     <u>Duty of Non-Solicitation of Customers</u>.  Employee acknowledges and agrees that solely by reason of employment by CRI, Employee will come into contact with a significant number of the Company's customers and prospective customers, and will have access to Confidential Information regarding the Company's customers, prospective customers and related information.  Accordingly, Employee agrees that for the duration of Employee's employment with CRI, and for a period of one (1) year after Employee's employment with CRI is terminated for any reason, whether voluntary or involuntary, he or she will not, without the prior written consent of the Company, directly or indirectly, individually or on behalf of others, solicit any of the Company's customers or prospective customers for the purpose of selling products and services that compete with those offered by the Company.  This restriction shall apply only to those customers and prospective customers of the Company with whom Employee had material contact.  For the purposes of this Section, the term "material contact" with respect to "customers" means interaction between Employee and the customer which takes place to further the business relationship, or making sales to or performing services for the customer on behalf of the Company or any predecessor entity of the Company.  For purposes of this Section, the term "material contact" with respect to a "prospective" customer means interaction between Employee and a potential customer of the Company or any predecessor entity of the Company which takes place to obtain the business of the potential client on behalf of the Company or any predecessor entity of the Company.

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



2.3     Duty of Non-Solicitation of Employees. Employee acknowledges and agrees that solely as a result of employment with CRI, and in light of the broad responsibilities of such employment which include working with other employees of the Company, Employee has and will come into contact with and acquire Confidential Information regarding employees of the Company, and will develop relationships with those employees. Accordingly, Employee agrees that Employee will not, during the term of employment with CRI and for an additional period of one (1) year after Employee's employment with CRI is terminated for any reason, whether voluntarily or involuntarily, for any reason whatsoever, directly or indirectly, individually or on behalf of others, recruit or solicit any employee or consultant of the Company to leave the employment or service of the Company.  This restriction shall apply only to those employees of the Company with whom Employee came into contact during the last two (2) years of his or her employment with CRI or any predecessor entity of the Company.

2.4     No Derogatory Statements.  Employee agrees not to make and/or publish in any manner, any derogatory or adverse statements, written or verbal, regarding the Company or its owners, directors, officers, employees, agents, affiliates, successors and/or assigns, except as permitted by law, to anyone including, but not limited to the Company's (or its successors and/or assigns) directors, officers, employees, agents, vendors, existing clients or potential clients that Employee knows that the Company has targeted.  Nothing in this Agreement prohibits Employee from discussing Personnel Information with other employees, or with third parties who are not future employers or competitors of the Company.

2.5     Duty of Non-Competition.

(a)     Employee is employed as Product Manager and is responsible for contributing to the strategy and the future direction of Apartments.com in the United States. Employee acknowledges and agrees that solely by reason of employment with CRI and in consideration for entering into this Agreement, Employee will come into contact with, have access to and learn various technical and non-technical trade secrets and other Confidential Information, which are the property of the Company. Employee also will receive training in the Company's proprietary business methods and practices.  All of the Company's trade secrets and Confidential Information have been developed, acquired and compiled by the Company at its great effort and expense.  Employee acknowledges, agrees and understands that the Company is relying upon this covenant not to compete in providing Employee access to its trade secrets and other Confidential Information and will not provide Employee access to this information but for Employee's agreement to this covenant.

(b)     Employee acknowledges and agrees that the Company is engaged in a highly competitive business and that by virtue of Employee's position and responsibilities with CRI and Employee's access to the trade secrets and Confidential Information, engaging in any business which is directly or indirectly competitive with the Company will cause it great and irreparable harm.

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



(c) Consequently, Employee covenants and agrees that so long as Employee is employed by CRI and for a period of one (1) year after such employment is terminated, whether voluntarily or involuntarily, Employee will not, without the express written consent of the Chief Executive Officer of CRI, directly or indirectly, on behalf of a Competitor (as defined herein) perform the same or similar duties or duties senior to those that Employee performed for CRI, the Company or any predecessor entity of the Company as long as the duties are of the type conducted, authorized, offered, or provided by Employee within two years prior to the end of employment.  Competitor shall be defined as any company or business that competes with the business unit(s) of the Company where Employee worked and that (i) provides an online resource to individuals seeking a rental apartment or home through the internet, or sells or provides advertising products and services in connection with such online resource to third parties, (ii) provides an online rental housing leasing platform used by property managers and renters, or (iii) sells, licenses or makes publicly available in a commercial forum: (A) any property level information with respect to commercial real estate, including, without limitation, space availability, comparable sales, tenant, sales, or sales transaction data; (B) commercial real estate market research, forecasting, or credit default modeling; (C) real estate business intelligence or real estate reporting tools; (D) real estate investment management software solutions, including portfolio management software; (E) commercial real estate management technology solutions (whether through services or licensing or sale of software), including, without limitation, real estate information management technology solutions and related consulting and data management services; or (F) such other related businesses as the Company may become engaged during Employee's employment with CRI.  Alternatively, for sales personnel only, this restriction shall apply throughout the territories to which Employee was assigned or for which Employee was responsible while employed by the Company. In recognition of the national nature of the Company's business, the fact that the Employee's skills are transferable from one location to another, the fact that the Employee provides specialized services to the Company and the Employee has and will have access to and will be provided with and learn various technical and non-technical trade secrets and other confidential information, this restriction shall apply anywhere in the United States where the Company is operating at the time Employee leaves employment with CRI.

(d) Employee acknowledges that in the event of a breach of this Section 2.5 by Employee, the Company may suffer irreparable harm and will be entitled to injunctive relief as well as all other remedies available at law or in equity. Employee represents and admits that upon cessation of Employee's employment with CRI, Employee's experience and capabilities are such that Employee can obtain employment with a new employer engaged in a different business or services different from that conducted by the Company, and the entry of an injunction to enforce the Duty of Non-Competition set forth herein shall not prevent Employee from earning a livelihood.

(e) Employee agrees that the Company may notify any person or entity employing Employee or evidencing an intent to employ Employee as to the existence and terms of this Agreement.

(f) If Employee changes positions in the Company, Employee agrees to sign an amendment to this Agreement to reflect the change(s).  In the meantime, Employee agrees that Section 2.5, as well as all other covenants in this Agreement, shall apply to Employee in Employee's new position. If Employee has any questions about the extent or scope of the covenants as applied to Employee's new position, Employee should contact the Human Resources Department.

**Section 3.  Employee Work Product**

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



3.1     <u>Disclosure of Work Product</u>.  Employee shall promptly and fully disclose to his or her supervisor any idea, invention, discovery, development, design, technique, improvement, plan, work of authorship, computer software, data information, enhancement, or other work product, whether tangible or intangible, developed by Employee, solely or jointly with others, during Employee's employment with CRI (1) made with the Company's equipment, supplies, facilities, trade secrets, or time; or (2) that relates, at the time of conception or reduction to practice to the Company's business, or the Company's actual or demonstrably anticipated research; or (3) results from any work performed by Employee for the Company (collectively the "Work Product").

3.2     <u>Ownership of Work Product</u>.  All Work Product shall be conclusively deemed to be conceived, made, developed, reduced to practice, prepared, or otherwise created within the scope of Employee's employment and shall be the sole property of the Company.  Employee hereby irrevocably assigns to the Company all right, title, and interest of whatever nature that Employee may have in the Work Product.

3.3     <u>Employee's Obligations</u>.  Employee shall, at the expense and on behalf of the Company, do all acts and things requested by the Company for the Company to obtain, establish, preserve, and protect the Company's rights and interests in the Work Product, including, but not limited to, preparing and signing such applications, papers, instruments, assignments, and other documents as the Company may deem necessary for it, or its nominee, to obtain and maintain patents, copyrights, trade secrets, trademarks, and service markings within the United States or elsewhere or both.  Employee's obligations under this Section of this Agreement shall be in effect at all times while Employee is employed by CRI and for three years after Employee's termination of employment with CRI.

**Section 4.  Enforcement**

Employee acknowledges and agrees that compliance with the covenants set forth in this Agreement is necessary to protect the Confidential Information and trade secrets, business and goodwill of the Company, and that any breach of this Agreement will result in irreparable and continuing harm to the Company, for which money damages may not provide adequate relief.  Accordingly, in the event of any breach or anticipatory breach of this Agreement by Employee, or Employee's claim in a declaratory judgment action that all or part of this Agreement is unenforceable, the parties agree that the Company shall be entitled to the following particular forms of relief as a result of such breach, in addition to any remedies otherwise available to it at law or in equity:  (a) injunctions, both preliminary and permanent, enjoining or restraining such breach or anticipatory breach, and Employee hereby consents to the issuance thereof forthwith and without bond by any court of competent jurisdiction; and (b) recovery of all reasonable sums and costs, including attorneys' fees, incurred by the Company to defend or enforce the provisions of this Agreement.  Additionally, the restrictive periods set forth in this Agreement (including those set forth in Sections 2 and 3 hereof) shall not expire and shall be tolled during any period in which Employee is in violation of such restrictive periods, and therefore such restrictive periods shall be extended for periods equal to the durations of Employee's violations thereof.

**Section 5.  Miscellaneous**

5.1     <u>Modification of Agreement</u>.  This Agreement may be modified only upon the written consent of both Employee and CRI, wherein specific reference is made to this Agreement.

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



5.2      Entire Agreement.  This Agreement constitutes the entire agreement between the parties.  There are no agreements, understandings, restrictions, warranties, or representations between the parties relating to this subject matter other than those in this Agreement.

5.3      Severability. The parties agree they have attempted to limit the scope of the post-employment restrictions contained herein to the extent necessary to protect the Company's Confidential Information, client relationships and good will.  It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under applicable laws and public policies.  Employee agrees that the provisions of this Agreement shall be enforced to the fullest extent permissible under applicable laws and public policies.  Accordingly, if any term or provision of this Agreement or any portion thereof is declared illegal or unenforceable by any court of competent jurisdiction, such provision or portion thereof shall be deemed modified so as to render it enforceable, and to the extent such provision or portion thereof cannot be rendered enforceable, this Agreement shall be considered divisible as to such provision which shall become null and void, leaving the remainder of this Agreement in full force and effect.

5.4      Governing Law. This Agreement shall be governed by the laws of Georgia, without reference to its conflicts of law provisions.

5.5      Survival.  Employee agrees that the provisions contained in this Agreement shall survive any termination of Employee's employment with CRI. The obligations under this Agreement also shall survive any changes made in the future to the employment terms of Employee, including but not limited to changes in salary, benefits, bonus plans, job title and job responsibilities.

5.6      Assignment and Successors.  Employee agrees that the terms of this Agreement shall inure to the benefit of and may be enforced by the Company and the Company's successors or assigns.  Employee agrees that the terms of this Agreement shall be binding upon him or her and his or her executors, administrators, legatees, distributees, and other successors in interest.

5.7      Payment of Costs and Attorneys' Fees.  A party who breaches the terms of this Agreement shall pay to the non-defaulting party all of the non-defaulting party's costs and expenses, including attorneys' fees, incurred in enforcing the terms of the Agreement, subject to the provisions of Section 5.10(e).

5.8      Opportunity for Review by Employee's Outside Counsel.   Employee acknowledges that he or she has read this Agreement in its entirety, and has had ample opportunity to have legal and financial counsel review the Agreement, explain its provisions, and provide appropriate advice.

5.9      Waiver of Breach.  The waiver by either party of a breach of any provisions of this Agreement by the other shall not operate or be construed as a waiver of any subsequent breach.  A delay or failure by either party to exercise a right under this Agreement, or a partial or single exercise of that right, shall not constitute a waiver of that or any other right.

5.10     Arbitration of Controversies.   EMPLOYEE'S INITIALS:  *CGC*

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



(a)     <u>When Arbitration is Required.</u>  In the event of any dispute, claim or controversy cognizable in a court of law between CRI and the Employee concerning any aspect of the employment relationship, including disputes upon termination, the parties agree to submit such dispute to final and binding arbitration before a single arbitrator pursuant to the provisions of the American Arbitration Association's Employment Dispute Resolution Procedures.  The parties acknowledge that this obligation to arbitrate disputes applies to claims for discrimination or harassment under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, Sections 1981 through 1988 of Title 42 of the United States Code, as well as any other federal, state, or local law, ordinance, or regulation, or based on any public policy, contract, tort, or common law or any claim for costs, fees, or other expenses including attorney's fees.  All claims and defenses which could be raised before a government administrative agency or court must be raised in arbitration and the arbitrator shall apply the law accordingly.  This arbitration provision does not permit the initiation of class claims or collective claims.  Similarly, consolidation of claims brought by separate employees is also prohibited.  Notwithstanding anything herein to the contrary, in the event that the prohibitions in the two immediately preceding sentences are found to be invalid or unenforceable, the dispute, claim or controversy subject to a class or collective claim or consolidation of claims shall not be subject to arbitration and shall be brought exclusively in Superior Court of the District of Columbia or in the United States District Court for the District of Columbia and the parties agree to the jurisdiction thereof.  Further, notwithstanding the foregoing, (a) claims that are required to be processed under a different procedure pursuant to the terms of an employee pension or benefit plan shall not be subject to arbitration; and (b) claims by Employees for state employment insurance (e.g., unemployment compensations, workers' compensation, worker's disability compensation) or under the National Labor Relations Act shall not be subject to arbitration.

Notwithstanding the foregoing, Employee and CRI recognize and acknowledge each party's right to request injunctive relief under appropriate circumstances, including but not limited to injunctive relief for any violations of Sections 1, 2 or 3 of this Agreement by Employee. The parties being desirous of having any disputes resolved in a forum having a substantial body of law and experience with the matters contained herein, the parties agree that any proceeding for injunctive relief shall be brought exclusively in the Superior Court of the District of Columbia or in the United States District Court for the District of Columbia and the parties agree to the jurisdiction thereof.

Employee and CRI further agree that this duty to arbitrate extends not only to disputes between Employee and CRI, but also to disputes between Employee and the Company, the Company's officers, directors, employees and agents that arise out of Employee's employment with CRI or the termination of that employment.

(b)     <u>Time for Demanding Arbitration.</u>  Any demand for arbitration shall be made in writing and served upon the other party to this Agreement.  Such demand shall be served no later than the expiration of the applicable statute of limitation period under governing law for such dispute(s).  Absent express written agreement of the parties, this time period shall not be extended by virtue of informal attempts to resolve the dispute.

(c)     <u>Remedies.</u>  The arbitrator shall have the power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction or administrative tribunal.

(d)     <u>Arbitration.</u>  The decision of the arbitrator shall be in writing.  Any court of competent jurisdiction shall enter judgment on the award.

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



(e)     <u>Costs of Arbitration.</u>  The costs of commencing the arbitration and the remainder of the arbitration fees will be paid by CRI.  Notwithstanding the foregoing, in the event that CRI is the prevailing party, the Employee shall pay an amount equal to the then current filing fee in federal district court.

(f)     <u>Place of Arbitration.</u>  The arbitration hearing shall occur within the County in which CRI's principal place of business is located, the County in which the conduct giving rise to the claim occurred, or as the arbitrator may otherwise order.

(g)     <u>Time to Consider or Revoke Agreement</u>.  Employee acknowledges that Employee's acceptance of binding arbitration in this Section 5.10, can be revoked any time within seven (7) days of his/her signing this Agreement, but such revocation must be submitted in writing and will result in his/her immediate termination and/or denial of consideration for employment.  Employee further acknowledges that he/she has had at least 21 days to consider Section 5.10 of this Agreement and has decided to sign knowingly, voluntarily, and free from duress or coercion.  Any revocation should be sent to Jaye Campbell, General Counsel and Secretary, CoStar Group, Inc., 1331 L Street, NW, Washington, DC  20005.

(h)     <u>Waiver of Jury Trial.</u>  Employee and CRI agree that if for any reason the arbitration provisions of this Agreement are declared unenforceable, they waive any right they may have to a jury trial with respect to any dispute or claim between them relating to any of the terms and conditions of this Agreement, Employee's employment with or termination from employment with CRI, including, but not limited to, any of the claims enumerated in paragraph 5.10(a) of this Agreement, as well as claims arising or relating to any confidentiality agreement Employee may sign.

5.11    <u>Counterparts</u>.  This Agreement, for the convenience of the parties, may be executed in any number of counterparts, all of which when taken together shall constitute one and the same Agreement.

5.12    <u>Notices</u>.  All notices given hereunder will be in writing, delivered personally or mailed by registered or certified mail, return receipt requested, or delivered by well-recognized overnight mail. If such notice is being delivered to the Employee, such notice shall be delivered to the address specified under such Employee's signature on this Agreement, and if being delivered to CRI, delivered to 1331 L Street, NW, Washington, DC 20005, Attention: Jaye Campbell, General Counsel and Secretary, or to such other address as either party may specify to the other from time to time.  All notices will be deemed given if delivered personally, on the day of delivery, if mailed by registered or certified mail, three days after the date of mailing, and if delivered by overnight mail, one day after mailing.

**Employee understands that by signing this Agreement, Employee agrees to resolve certain disputes with CRI and/or the Company by means of binding arbitration as set forth in paragraph 5.10, above.**

*Signature page follows.*

In Witness whereof, each of the Employee and CRI have signed this Agreement to be effective as of the last date noted below.

Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.



Employee Name:  Colton G Chastine

Signature: *Colton G Chastine*
Colton G Chastine (Jun 17, 2021 11:26 EDT)

Address:  511 McBride Road Fayette

Phone number:  4042818413

Date:  Jun 17, 2021


COSTAR REALTY INFORMATION, INC.

By: /s/Karen Licsko

Name:      Karen Licsko

Title: Vice President, Rewards & HR Operations

Date:            01/15/2021


Jun 16, 2021 2:15 PM

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.